IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEITH BEAUCHAMP,

                Plaintiff,

v.

PAUL SUMNICHT, BELINDA SCHRUBBE and
KENNETH ADLER,

                Defendants.

OPINION AND ORDER

11-cv-347-wmc

---

    Plaintiff Keith Beauchamp, an inmate at the Waupun Correctional Institution, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Paul Sumnicht, Belinda Schrubbe and Kenneth Adler acted with deliberate indifference in failing to properly treat his hernia. Defendants have moved for summary judgment. Because the court finds that no reasonable jury could find for Beauchamp, the court will grant defendants' motion for summary judgment.

UNDISPUTED FACTS[1]

    **I.**    **The Parties**

    Plaintiff Keith Beauchamp has been incarcerated at the Waupun Correctional Institution (WCI) since February 17, 2003. Defendant Paul Sumnicht was employed as a physician at WCI from April 1, 2007 to October 7, 2012. Defendant Kenneth Adler has been employed by the DOC as a physician at the Jackson Correctional Institution

---

[1] The court finds the following facts taken from the parties' proposed findings of fact to be material and undisputed.

since March 2006.  Occasionally, Adler also provides medical services to inmates at other correctional institutions when their physicians are not available.  Defendant Belinda Schrubbe is a licensed registered nurse and has been employed by the DOC as the WCI Health Services Unit (HSU) manager since December 2001.  The HSU manager is responsible for generally overseeing the delivery of all medical services and providing administrative support to physicians and other HSU staff at WCI.  Because of her supervisory responsibilities, Schrubbe does not usually participate in or provide direct patient care.

## II.     Methods of Approval for Offsite Care

Under DOC policy, practitioners must obtain approval from the Bureau of Health Services ("BHS") before referring an inmate for offsite non-emergency care.  The physician submits a "Class III" request to BHS when an inmate has a non-urgent, medical issue that requires him to go off-site (1) to see a specialist or (2) to receive a procedure not ordinarily performed at the institution.

BHS reviews Class III requests in two ways.  One way is for practitioners to submit a request using an electronic database.  BHS staff then reviews it and makes a determination (approval/denial) on the request. Staff may also submit the request to DOC Medical Director David Burnett for review and determination if the request does not meet all the criteria for approval or there is some question about the request.

The other way is for the physician or nurse practitioner to submit the request for review by a committee of doctors and nurse practitioners (known as the "Prior

Authorization Committee"). The committee meets once a week. The objective of the committee's review is to determine whether the Class III request is medically necessary; and if so, whether the request is the proper (i.e., the treatment is needed or an alternative treatment would better treat the inmate's non-urgent medical issue). If the Class III request is approved, the submitting physician will be notified and HSU staff at the institution will make an appointment for the inmate to be seen off-site by a consulting physician.

### III. Beauchamp's Treatment

Beauchamp is a diabetic with Chronic Obstructive Pulmonary Disease (COPD) and Arteriosclerotic Vascular Disease (ASVD). On January 7, 2010, Dr. Sumnicht submitted a Class III "Prior Authorization for Therapeutic Level of Care" form to the Committee, requesting approval for Beauchamp to undergo an abdominal wall reconstruction by general and plastic surgery. The request stemmed from the fact that Beauchamp was experiencing pain secondary to a twice-failed abdominal wall surgical mesh repair for a separation of his abdominal muscles after he experienced a symptomatic incisional hernia in 2006 subsequent to Coronary Artery Bypass Graft (CABG) surgery. The initial surgical hernia repair was performed on October 9, 2007, and was then redone with larger mesh on August 26, 2009. After his second surgery, Beauchamp required antibiotics for post-operative abdominal wall cellulitis, which is a severe inflammation of connective tissue and various layers of the skin.[2]

---

[2] Sumnicht also noted on the request form that Beauchamp had a pre-existing condition called "claudication," which is a crampy leg pain that occurs during exercise when there is

On January 13, 2010, Dr. Adler filled in as the chair of a BHS Prior Authorization Committee that reviewed Beauchamp's referral for surgery. The Committee met by telephone and consisted of at least five physicians board-certified in family practice and internal medicine, as well as one nurse practitioner. The committee denied Dr. Sumnicht's request for surgery, based on (1) the fact that incisional hernias are among the most frustrating and difficult hernias to treat, no matter the method used; and (2) Beauchamp's medical condition, including that he was at a higher risk of post-op infection given his need for antibiotics after his last surgery. The Committee noted Beauchamp was complaining of pain, but found there were significant risks that could be anticipated with surgery. Instead, the Committee recommended physical therapy evaluation for exercise and activity limitations, and suggested that his pain be treated empirically.

Dr. Sumnicht saw Beauchamp again on January 21, 2010. At that time, they discussed the Committee's determination that surgery should be denied until there was further documentation of dysfunction, based on the fact that they considered it a pain management issue. He was ordered a second mattress and started on a medication to induce softer bowel movements, which would help his discomfort. Dr. Sumnicht also suggested that he pursue a physical therapy evaluation to document functions/dysfunctions. Beauchamp became upset and quickly left the room upon learning that surgery had not been approved. On February 10, 2010, Sumnicht noted in

---

insufficient blood flow in the legs. Plaintiff argues that Dr. Sumnicht misdiagnosed him with claudication, pointing to an August 28, 2009, treatment note in which Sumnicht reviewed a vascular fellow's note reporting that there was no need for claudication treatment at that time.

Beauchamp's chart that the request for surgery could be resubmitted for review at a future date.

Beauchamp saw an HSU nurse on February 26, 2010, for follow-up of his diabetes, COPD, hypertension and hyperlipidemia. Although his weight was measured at 281 pounds, at that time notes indicate that he did not want to discuss weight loss as a way to manage his pain. Rather, he believed that excess weight would be removed with his hernia surgery.

On March 3, 2010, Nurse Schrubbe spoke with a sergeant in Beauchamp's cell hall regarding his functioning. He was observed performing all activities of daily living, working, and moving around the cell hall in no apparent distress. That same day, Dr. Sumnicht saw Beauchamp for evaluation. He had adequate functioning with the exception of tying his shoes. Sumnicht noted no medical necessity for a third abdominal hernia repair at that time. Beauchamp was instead provided with Velcro shoes, an extra pillow and a thick mattress.

Beauchamp was seen again in the HSU on June 28, 2010, where he was provided with a new abdominal binder. Approximately two months later, he requested and was provided with an extra-large abdominal binder.

On September 1, 2010, Dr. Sumnicht saw Beauchamp in the HSU for complaints of leg pain. Because of Beauchamp's history of peripheral arterial disease, Sumnicht again suspected claudication. On September 14, 2010, Beauchamp asked HSU staff to replace his abdominal binder because the Velcro was worn and was not holding it closed. The next day, he was provided with another binder. Beauchamp was seen on September

22, 2010, for complaints that his replacement binder was too loose. He was provided with a binder of a different size and style. On September 29, 2010, HSU received a request from Beauchamp for a larger binder, which was ordered for him.

On October 6, 2010, Beauchamp was seen at Waupun Memorial Hospital for an Ankle-Brachial Index (ABI) test. This test is used to predict the severity of peripheral arterial disease by measuring blood pressure at the ankle and in the arm while a person is at rest. Measurements are usually repeated at both sites after 5 minutes of walking on a treadmill or some other such exercise. Beauchamp's left AB indices were within normal limits and the right AB indices remained abnormal, although the indices had improved from previous examinations.

On October 12, 2010, Dr. Sumnicht saw Beauchamp in the HSU. Sumnicht noted that his blood sugar control was better. He also noted that Beauchamp moved well out of his chair and was energetic. Sumnicht extended the order for his abdominal binder for one year and gave him modified plank/core exercises as well. Beauchamp was given his new abdominal binder on October 13, 2010.

On November 17, 2010, Dr. Sumnicht saw Beauchamp regarding leg claudication. He explained that Beauchamp's ABI results were normal, and that it was not necessary for him to see a vascular specialist for any type of treatment. Sumnicht suggested that he continue risk-factor treatment, such as improving his diabetes and lipid control, as well as smoking cessation.

Beauchamp wrote to HSU staff on November 18, 2010, stating that when he saw Dr. Sumnicht the day before, he was told that his blood flow had improved in his right

6

leg. Beauchamp wrote that since the blood flow problem was keeping him from the hernia repair, he should now be "good" for surgery. Accordingly, Beauchamp wrote that staff should complete the paperwork for surgery. Sumnicht responded in writing the next day, reiterating to Beauchamp that the Committee had denied the surgery in January 2010.

On November 29, 2010, Beauchamp was seen by a nurse in HSU after submitting a Health Service Request (HSR) regarding being sized for a binder to fit around his hernia. The nurse took measurements, examined the binder, and ordered a new one.

On December 6, 2010, Beauchamp's cell was searched per standard operating procedure. He alleged that after the search, his bed had been left hooked to the side wall and, when he went to put the bed down, the edge of the bed hit his hernia. Beauchamp submitted an HSR the next day and was seen on December 10, 2010. Per Dr. Sumnicht's directive, Beauchamp was later transported to the Emergency Room at Waupun Memorial Hospital. After an x-ray revealed a normal abdomen (apart from a moderate amount of fecal matter and gas throughout the colon), the ER doctor sent him back to the institution with a diagnosis of severe constipation (obstipation) and abdominal pain related to scar tissue from the old hernia repair. The ER doctor recommended that Beauchamp (1) have a colonoscopy performed unless he had one done within three years, and (2) be seen by the surgery staff who had previously repaired the hernia. Upon Beauchamp's return from the Emergency Room, Dr. Sumnicht noted the treating physician's recommendations and ordered Miralax and Magnesium Oxide to relieve his constipation. An appointment was also scheduled with Sumnicht for follow-

up.

On December 13, 2010, Dr. Sumnicht again saw Beauchamp in the WCI HSU. At that time, Beauchamp complained of constipation and nausea, as well as soreness in his upper abdomen (where he indicated the bed slid over him). Dr. Sumnicht noted that Beauchamp's constipation was better and that he should continue risk-factor treatment because he had shown improved vascular function in his legs. During that visit, they also discussed the Committee denying the hernia repair surgery request in January 2010. Sumnicht explained that there was no medical necessity to refer him to a surgeon, because nothing had changed to justify a new Class III request. Dr. Sumnicht also saw no need for him to have a colonoscopy, as his digestive system was working well. After hearing this, Beauchamp again became upset and marched out of the room.

On December 14, 2010, Nurse Schrubbe received a letter from Beauchamp requesting that she help him get approval for hernia surgery or provide him with the names of those on the Committee who denied Dr. Sumnicht's request. On January 4, 2011, Nurse Schrubbe responded to Beauchamp in writing, indicating that she had reviewed his chart and explaining that the ER doctor made a recommendation only, without knowing his medical history or workup. She sent him a copy of the Committee's decision dated January 13, 2010, and suggested that he contact defendant Adler, as the committee chair.

Beauchamp wrote to Schrubbe again on January 9, 2011 informing her that she sent him the wrong information; he believed there was a second request that had been submitted to the Committee. Schrubbe responded to Beauchamp on January 11, 2011,

8

indicating that she did not know who was on the Committee on the day they denied his request. She also again suggested that he contact Dr. Adler, including a copy of the request form containing the Committee's decision dated January 13, 2010.

Schrubbe received another letter from Beauchamp dated January 17, 2011, which requested a copy of the "current" prior authorization form for his hernia surgery. Beauchamp indicated that this second request should have been dated December 13, 2010. Schrubbe responded in writing a week later, on January 24, 2011, stating that there was no such form and, as previously indicated, the only one request submitted by Dr. Sumnicht was dated January 7, 2010.

On April 16, 2012, Beauchamp was seen in the HSU to be measured for a new abdominal binder. HSU staff also saw Beauchamp on April 27, 2012, for complaints of tennis elbow and issues with his binder. The nurse also discussed Beauchamp's concerns about his hernia with Dr. Sumnicht. Sumnicht indicated that Beauchamp was not a candidate for surgical repair of his hernia unless it was on an emergency basis. On April 27, 2012, Beauchamp received his new binder, but complained that it was too small.

On May 15, 2012, Dr. Sumnicht again saw Beauchamp, who complained that he hurt his arm at work. Beauchamp also complained that he was experiencing on and off irritation from his hernia when he was standing, or walking; otherwise, he had minimal pain. Sumnicht examined Beauchamp and ordered that he be allowed to sit down for work as needed.

OPINION

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The court's function on summary judgment "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. All reasonable inferences from undisputed facts are drawn in favor of plaintiff as the nonmoving party. *See Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). Even under this lenient standard, however, plaintiff must "show through specific evidence that a triable issue of fact remains on issues for which [he] bears the burden of proof at trial" and "the evidence submitted in support of [his] position must be sufficiently strong that a jury could reasonably find for [him]." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009) (internal quotation omitted). This Beauchamp has not done.

Beauchamp was allowed to proceed on claims that defendants denial of hernia repair surgery and pain medication violated his rights under the Eighth Amendment.[3] To state an Eighth Amendment claim for lack of medical care, a prisoner must provide facts

---

[3] The Eighth Amendment requires that the government "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468U.S. 517, 526-27 (1984)).

from which it can be inferred that he had a "serious medical need" and that prison officials were "deliberately indifferent" to this need. *Farmer*, 511 U.S. at 104.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated or results in needless pain and suffering, *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997); "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer*, 511 U.S. at 847. "Deliberate indifference" means that defendant was aware that the prisoner needed medical treatment but disregarded the risk by failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

However, a disagreement with a doctor's medical judgment or "mere medical malpractice" is not enough. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Plaintiff must show that "the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996).

In their brief, defendants do not argue that Beauchamp's hernia is not a serious medical need and the court deems this element to have been conceded for purposes of their motion for summary judgment. Defendants do argue that they were not

11

deliberately indifferent to Beauchamp's hernia, having provided medical care for his hernia, just not the care that he wanted (i.e., another surgery). The undisputed facts above show that Beauchamp was repeatedly evaluated and provided with various comfort items throughout the time defendants Sumnicht and Schrubbe treated him. Perhaps most importantly, the DOC Prior Authorization Committee (comprised of Dr. Adler and at least four other doctors, all of whom, like Adler, were board certified in internal medicine, as well as a nurse practitioner) denied the surgical request based on their collective medical judgment that surgery was not the appropriate option.

For his part, Beauchamp seems to agree with defendants' assertion that Dr. Adler did not violate his constitutional rights as chair of the authorization committee, acknowledging that Adler was only working with information provided by Dr. Sumnicht, including an allegedly erroneous "claudication" diagnosis that made it less likely the Committee would approve surgery.[4]

Similarly, regarding defendant Schrubbe, it is unclear what would form the basis of a viable deliberate indifference claim at this point. At the screening stage, the court allowed Beauchamp to proceed against Schrubbe on the "tissue-thin" theory that she failed to respond reasonably to Beauchamp's complaint about being denied surgery by the Committee. (Dkt. #12.) The summary judgment record bears out no more than a dispute between Beauchamp and Schrubbe in December 2010 about whether a second Class III request made to the Committee, but Beauchamp provides no evidence

---

[4] One of defendants' state: "At no time did Adler violate any constitutional rights afforded to Keith Beauchamp." Def.'s PFOF #26. However, this is a legal conclusion, not factual proposition, that neither belongs in their proposed findings of fact, nor is it binding on the plaintiff.

suggesting there was a second request. Indeed, the evidence is quite to the contrary. As importantly, Beauchamp offers no explaination as to how Schrubbe might have violated his Eighth Amendment rights even if there had been a second request.

Thus, on summary judgment, Beauchamp now focuses his argument on Dr. Sumnicht's actions. Even assuming that Sumnicht was incorrect in diagnosing Beauchamp with claudication, however, Beauchamp has fallen far short of showing that Sumnicht acted with deliberate indifference. Again, to the contrary, Dr. Sumnicht was the one who submitted the Class III request in the first place in an attempt to get Beauchamp the surgery. To the extent that Dr. Sumnicht's diagnosis of claudication was both incorrect and material to Beauchamp's surgery request (and the evidence is it was neither), such a mistake would at most constitute negligence, rather than deliberate indifference. And the former is not actionable under the Eighth Amendment. *See Edwards*, 478 F.3d at 831.

Finally, Beauchamp appears to argue that because more recent tests have shown improved vascular function, he should now be cleared for surgery. Dr. Sumnicht's medical opinion is that not enough has changed to warrant a new Class III request, and Beauchamp is not qualified to dispute that medical judgment. Even if Sumnicht is incorrect in this medical opinion, again, mere negligence does not suffice for Beauchamp to prevail on his Eighth Amendment claim.

13

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #33) is GRANTED.

2) The clerk of the court is directed to enter judgment in favor of defendants and close this case.

Entered this 20th day of August, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge